(120 App. Div. 304)

### LOWENTHAL v. HODGE.

### In re HODGE.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

1. CONTEMPT—REMOVAL OF ATTACHED PROPERTY.

    The power of a court to punish for contempt for removing attached property from its jurisdiction is inherent.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Contempt, §§ 51, 93.]

2. SAME—ATTORNEY.

    That an attorney was not the party upon whom an attachment was served does not affect his liability for contempt for its removal from the court's jurisdiction; it being sufficient that, knowing the facts, he participated in its removal.

3. ATTACHMENT—CORPORATE STOCK—NECESSITY FOR TAKING INTO CUSTODY.

    An attachment of stock certificates of a foreign corporation was not invalid because the officer did not take actual custody, where they were in the possession of a third person, who was entitled to retain them temporarily under a pooling agreement.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attachment, § 480.]

4. SAME.

    An attachment of stock certificates was not invalid because the person with whom the sheriff left a certified copy of the warrant and a notice showing the property attached was not the person holding the certificates, where he had been explicitly created by such person as agent to hold the stock, to receive service of the attachment, and give a certificate showing possession.

5. SAME—PROPERTY—REMOVAL—REMEDY.

    Where the custodian of corporate stock, which had been levied upon in attachment as the property of another, and the stock, are both out of the court's jurisdiction, Code Civ. Proc., § 655, authorizing the sheriff in certain cases to sue in aid of an attachment, does not afford a remedy to bring the stock back into jurisdiction.

Appeal from Special Term.

Action by Adolph S. Lowenthal against Charles J. Hodge. Plaintiff appeals from an order denying his motion to require Lydia A. Hodge and Granville · Whittlesey to bring property upon which attachment levy had been made within the jurisdiction of the court. Modified and affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

William P. Maloney, for appellant.

Geo. Welwood Murray, for respondent.

SCOTT, J. The plaintiff appeals from an order denying his motion that Lydia A. Hodge and one Granville Whittlesey, an attorney of this court, be required to bring within the state of New York, and within the jurisdiction of this court, 42,000 shares of the capital stock of the Nevada-Utah Mines & Smelters Corporation, upon which levy was made in this action by the sheriff of the county of New York, and that in case of the failure or refusal of said Whittlesey to bring the said certificate of stock within the state of New York, and within the jurisdiction of the court, in such manner as may be prescribed by the court, that the said Whittlesey be punished as for a contempt of this court. There is no proof of the service of the order to show cause on Whittlesey; but the order denying the motion recites that it was made upon motion of the attorneys for Whittlesey, and he made an affidavit which was read in opposition to the motion, so that he appears to have had full knowledge of the motion, and to have participated in it; but, as he has failed to appear or file a brief upon this appeal, we must conclude that he is singularly oblivious of the serious offense of which he has been guilty towards the court, and towards his own duty as one of its attorneys, or is indifferent with respect thereto. His offense consists of actively participating in taking out of the state, and beyond the jurisdiction of this court, property held here in custodia legis under an attachment issued out of this court, the levy of which the court had expressly refused to vacate.

It appears from the papers presented to the court that in February, 1906, the plaintiff, Adolph S. Lowenthal, commenced an action in this court against one Charles J. Hodge, a nonresident of this state, and in that action sued a writ of attachment. Hodge, at that time, was the owner of 42,000 shares of the capital stock of the Nevada-Utah Mines & Smelters Corporation, which were held by one John Weir, the president of the corporation, under what is called in the papers an "escrow" agreement, but which appears to have been a sort of pooling agreement between a number of holders of the stock, including Hodge, that their stock should remain on deposit with Weir until January 1, 1907, in order to guard against an attempt by any one of them to forestall his associates by throwing the stock on the market. The company had offices in the city of New York which were occupied by Weir and one Thomas M. Smith, the assistant secretary and treasurer of the corporation. The deposited stock was kept in a safe in one of the company's offices; the safe being accessible to both Weir and Smith. Before plaintiff commenced his action, Weir was informed of the fact that it was about to be brought, and that an attachment

was to be applied for. This projected action seems to have met with his entire approval, evidenced by the fact that he consented that the attorneys for the corporation should represent plaintiff in his action against Hodge. Weir informed plaintiff and others interested with him that he had arranged to leave the city upon a certain train to go to Salt Lake City, but promised to wait until the last possible moment in order that the attachment might be served upon him, and that he might give the sheriff a certificate to the effect that he held the shares. Weir also assured the plaintiff's then attorney that, if the papers were not ready in time to be served on him, it would make no difference; that Smith had charge of the stock at the office of the company, and would give just as good a certificate as he (Weir) could give; and that he (Weir) had authorized him to do so. He further said: "It is just the same thing if you serve Smith."

The attachment papers were not prepared in time to be served on Weir before he left, and the attachment was accordingly served on Smith, at the company's office, who thereupon gave a certificate in his own name to the effect that he then held property of the defendant, Hodge, consisting of 42,000 shares of the above-named corporation, which had been delivered by the said Hodge to John Weir, the president of the corporation, under a written escrow agreement, providing that the same were to be held in escrow by John Weir until January 1, 1907, and to be delivered on and after that date as called for at the office of the corporation in this city. The certificate further stated that the said John Weir was then absent from the city of New York, and that the said shares were in his safe in the city of New York, which safe and its contents were in said Smith's care, as representative of said John Weir during his absence from the city of New York. Subsequently, Hodge moved to vacate the levy of the attachment, which motion was denied by an order entered in August, 1906. The affidavits show that all these facts were known to Whittlesey, who was the attorney for said Weir. In March, 1907, Lydia A. Hodge, the wife of the defendant, claiming to be the owner of the stock under an assignment from her husband, renewed the motion to vacate the levy, basing her motion in part upon an affidavit by the said Whittlesey, dated March 4, 1907, in which, among other things, he stated that the certificates of stock which had been levied upon were not then within this state. Thereupon the present motion was made, in response to which the said Whittlesey made an affidavit, under date of March 22d, in which he stated that:

"The said John Weir, who now is, and for some weeks past has been, in California, before leaving New York gave, and since his departure from New York has given, deponent, as his attorney, instructions to take such stock from the depository with which the said Weir caused the same to be deposited in his, the said Weir's name, if when and as the said Weir might give deponent as his attorney specific instructions so to do for him and on his behalf. That said stock was not deposited by said Weir without the state of New York for the purpose of affecting any rights of the plaintiff under the claimed levy of attachment referred to in plaintiff's affidavit, but to avoid the said Weir from being harassed or prevented by suits or proceedings which might hamper or prevent said Weir from carrying out the purposes for which said stock had been placed in his custody, possession, and under his control in escrow."

This affidavit is regretably lacking in that frankness which the court is entitled to expect from an attorney charged with participation in an attempt to defeat its process; but we can clearly deduce from it that, while the stock was to his knowledge under levy of an attachment, which the court had refused to discharge, this attorney, knowing the facts, had taken, or assisted in taking, the stock without the state and beyond the jurisdiction of the court. A writ of attachment is a "mandate" of the court (Code Civ. Proc. § 3343, subd. 2), and also falls within the definition of an "order" (Code Civ. Proc. § 767). The sheriff to whom the attachment is directed is an officer of the court, charged with the duty of enforcing the mandate of the court, and property levied upon by him by authority of such a mandate becomes, while in his possession, in the possession of the court, and it has always been held that interference with the possession of an officer of the court, under an order or mandate of the court, is an interference with the possession of the court itself, and therefore a contempt. Noe v. Gibson, 7 Paige, 513; Le Favor v. Whitman Show Co. (C. C.) 65 Fed. 785; Gilman v. Williams, 7 Wis. 329, 76 Am. Dec. 219. This rule has recently been applied by this court where property had been levied upon under an execution, and the person proceeded against and held guilty of contempt had fraudulently executed a replevin bond, with the purpose and result of withdrawing the property from the possession of the marshal, and taking it beyond the jurisdiction. Matter of Goslin, 95 App. Div. 407, 88 N. Y. Supp. 670. In that case the person found guilty of contempt was fined the whole amount of the judgment. The power to punish for contempt in a case like the present is inherent in every court, else the authority of the law could safely be set at defiance. "The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings and to the enforcement of the judgments, orders, and writs of the court, and consequently to the due administration of justice. * * * The purpose of contempt proceedings is to uphold the power of the court, and also to secure to suitors therein the rights by it awarded." Bessette v. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997, quoting from Ex parte Robinson, 19 Wall. (U. S.) 510, 22 L. Ed. 205. As was said by the Court of Appeals:

"Any person who interferes with the process or control or action of the court in a pending litigation unlawfully and without authority is guilty of a civil contempt, if his act defeats, impairs, impedes, or prejudices the right or remedy of a party to such an action or proceeding." King v. Barnes, 113 N. Y. 479, 21 N. E. 182.

And to the same effect is section 14, Code Civ. Proc.

That the act of taking the attached property out of the jurisdiction was calculated to defeat and prejudice the plaintiff's remedy is obvious, for, under section 707 of the Code of Civil Procedure, the judgment which the plaintiff has obtained, being founded upon substituted service, and without an appearance by the defendant, can be satisfied only out of the attached property. That the attorney was not the party upon whom the attachment was served is of no consequence. It is sufficient that, knowing the facts, he participated in removing the

attached property, and his conduct in that regard is all the more reprehensible and unjustifiable because he is an officer of the court whose process he has violated.    Stolts v. Tuska, 82 App. Div. 81, 81 N. Y. Supp. 638.    As has been said, the attorney has not undertaken to defend himself, or to explain upon what theory, if any, he justifies his acts.    We are left to assume that he relies upon the position taken by the defendant that the levy of the attachment was invalid and ineffectual.    We much doubt whether the attorney can be heard to offer this excuse, especially after the court had refused to vacate the levy. United States v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319. It may be as well, however, to consider the grounds upon which the levy is attacked.    They are two:  First, that the sheriff attempted to levy upon the stock certificates of a foreign corporation without taking the same into his actual custody, as required by law; and, second, that Thomas M. Smith, the person with whom the sheriff did leave a certified copy of the warrant and a notice showing the property attached, was not the person holding the stock certificates of the Nevada-Utah Miners & Smelters Corporation which it was attempted to attach, and that he has never held or had the custody of the said stock or stock certificates, either at that time, before or since.    The first question seems to be answered by Simpson v. New Jersey Contracting Co., 165 N. Y. 193, 58 N. E. 896, 55 L. R. A. 796.    In that case it was held that:

, "Where the certificates of stock of a foreign corporation, belonging to a nonresident of this state, are in possession of a resident of this state, as pledgee, the interest of the owner and pledgor can be levied upon under a warrant of attachment against such owner, made by service of a notice upon the pledgee in the manner prescribed by subdivision 3 of section 649 of the Code of Civil Procedure."

The only difference between that case and the present is that there the person holding the certificates of stock had advanced money upon them as security.    This, as we consider, does not affect the principle underlying that decision.    An attachment is merely a possessory process, and if the person holding the attached property so holds it by a right or title, which would justify its retention from the owner, it will, generally, be sufficient to justify a refusal to make actual delivery to the sheriff, and the agreement under which Weir held the stock would, as it appears, have justified his withholding the stock from the real owner until January 1, 1907; the consideration for Hodge's agreement that it should be held until that time being found in the like mutual agreements by the other depositors.    The objection that the stock was not in Smith's custody, but in Weir's, is unavailing, and most of all to Weir and his attorney.    Weir explicitly created Smith his agent to hold the stock, to receive service of the attachment, and to give the certificate, and neither he nor his attorney can now be heard to say that the levy was invalid for this reason.    We find, therefore, no reason for questioning the sufficiency of the levy, and certainly none that is available to the attorney.    Section 655 of the Code of Civil Procedure, which authorizes the sheriff in certain cases to maintain an action in aid of an attachment, does not meet the present case, for the stock, and Weir, who was the custodian, and

apparently controls or directs its disposition, are both out of the jurisdiction. The section only authorizes actions to reduce property into possession. Such an action cannot be maintained against Weir because he cannot be reached, and, if brought against Whittlesey, could be defeated by showing that the property was not now in his possession.

It follows that the order should be modified so as to direct Granville Whittlesey to return the 42,000 shares of stock referred to in the order appealed from to this state, and within the jurisdiction of the court, within 15 days after service of the modified order upon him, and, since the so-called escrow period has elapsed, he should be required to deliver the said stock into the custody of the sheriff. If he should refuse or neglect to do so, the plaintiff will be at liberty to make such further motion as he may be advised. So far as Lydia A. Hodge is concerned, the papers fail to connect her with the removal of the property, and the motion was properly denied as to her.

The order will be modified as above indicated, and as modified affirmed, with $10 costs and disbursements to the appellant, to be paid by the respondent Whittlesey personally. All concur.