**LEBER–KREBS, INC.,**
Plaintiff-Appellant,

v.

**CAPITOL RECORDS,**
Defendant-Appellee.

**No. 109, Docket 85–7245.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 27, 1985.
Decided Dec. 23, 1985.

Steven M. Kramer, Philadelphia, Pa. (Richard Bello, Barr & Bello, New York City, of counsel), for plaintiff-appellant.

Solomon Granett, New York City (Granett & Gold, P.C., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Ordinarily, after a plaintiff obtains an *ex parte* attachment order against a debtor's property it attempts to garnish assets of the debtor in the hands of a third party. This appeal presents the vexing problem that arises when a plaintiff claims that its rights to enforce a judgment against the debtor were lost because the garnishee falsely denied holding any of the debtor's property. As a result, when plaintiff moved within the statutorily mandated five-day period to confirm its attachment, the district court denied the motion. Thereafter plaintiff commenced the instant litigation against the third party as defendant claiming that the third party's false failure to reveal debtor's property in its hands was a damaging lie constituting a fraud on plaintiff and on the court. Defendant moved to dismiss plaintiff's action arguing that the intervening decision of *Eisenberg v. Citation-Langley Corp.*, 92 A.D.2d 795, 459 N.Y.S.2d 788 (1st Dep't 1983), now made it impossible for plaintiff to state a case inasmuch as the unconfirmed attachment order was void. The district court agreed that no remedy could be fashioned on a void order and granted defendant's motion to dismiss.

We disagree with this result. First, *Eisenberg* does not mandate so stringent an application of New York's CPLR when fraud is alleged. Moreover, the allegations of fraud on a motion to dismiss must be assumed to be true particularly where, other than a denial, there is no evidence in opposition. *See Klapprott v. United States*, 335 U.S. 601, 603–04, 69 S.Ct. 384, 385, 93 L.Ed.2d 266 (1949). Second, courts have always had the power to do equity to prevent the rigors of the law or the rigidity of its words from accomplishing an injustice. *See id.* at 614–15, 69 S.Ct. at 390. We therefore reverse and remand to determine whether Capitol prevented Leber-Krebs from confirming its attachment order by the use of fraud.

## I FACTS

The facts are relatively straightforward. On February 19, 1981 plaintiff Leber-Krebs Inc., a management company, commenced an action in federal court for commissions against a contemporary recording artist, George Clinton, for his alleged breach of a management contract. An action based upon the same facts and seeking the same relief was then pending in the New York State Supreme Court. Pursuant to Rule 64 of the Federal Rules of Civil Procedure and Article 62 of New York's CPLR, Leber-Krebs obtained an *ex parte* order that attached royalties due Clinton from record companies, music publishers and concert promoters in New York.

It then attempted on two occasions to levy on the attachment order. First, on March 29, 1982 it caused a copy of the order to be served on Capitol Records, Inc. pursuant to N.Y. CPLR 6214(a) (McKinney 1980). Four days later on April 2 it moved to confirm the *ex parte* order, giving notice to both Clinton and Capitol.[1] Capitol on April 15, 1982 filed a garnishee's statement in compliance with N.Y. CPLR 6219[2] re-

---

1. CPLR 6211(b) (McKinney 1980) provides in part:

   An order of attachment granted without notice shall provide that within a period not to exceed five days after levy, the plaintiff shall move, on such notice as the court shall direct to the defendant, the garnishee, if any, and the sheriff, for an order confirming the order of attachment. If plaintiff fails to make such motion within the required period, the order of attachment and any levy thereunder shall have no further effect and shall be vacated upon motion.

2. CPLR 6219 (McKinney 1980) provides:

   Within ten days after service upon a garnishee of an order of attachment, or within such shorter time as the court may direct, the garnishee shall serve upon the sheriff a statement specifying all debts of the garnishee to the defendant, when the debts are due, all property in the possession or custody of the

porting that, on that date, Capitol neither held any of Clinton's property, nor was it indebted to him. Capitol did not participate in the argument on the motion to confirm, although Clinton and Leber-Krebs both appeared. The district court denied Leber-Krebs' motion to confirm the attachment because of its belief that confirmation was "not yet ripe for adjudication" inasmuch as Capitol claimed, without dispute, that it held none of Clinton's property.

Leber-Krebs later learned that Capitol had arguably been in possession of property belonging to Clinton. Thus, on December 27, 1982 it made a second attempt to levy on the original attachment order, and timely moved to confirm. Capitol responded in a second garnishee statement dated January 28, 1983. While Capitol continued to maintain that it held none of Clinton's property, this statement did disclose that a division of Capitol, EMI America Records, had entered into a recording contract with Clinton on November 2, 1981. Capitol revealed that it had advanced to Clinton on December 23 and 27, 1982 a total of $100,-000 under the terms of that 1981 agreement. On March 1, 1983 the district court, for reasons not here relevant, denied Leber-Krebs' motion to confirm and granted Clinton's cross-motion to vacate the order of attachment.

The instant action against Capitol was then instituted by plaintiff Leber-Krebs on February 22, 1983 in the United States District Court for the Southern District of New York (Goettel, J.). The gravamen of plaintiff's complaint alleges that Capitol's first garnishee statement was false and in violation of the attachment order. Support for this assertion is based on Capitol's second garnishee statement of January 1983 which proves, plaintiff insists, that Capitol falsely filed its initial garnishee statement in April 1982. Leber-Krebs alleges that the payments made to Clinton in December 1982 evidence that Capitol was holding Clinton's property in April of 1982 pursuant to the November 2, 1981 contract between Clinton and EMI. The complaint also asserts that Capitol's false statement constituted a fraud damaging Leber-Krebs' ability to retain control of Clinton's assets and to use them to enforce any subsequently rendered judgment. On June 10, 1983 the district judge denied Capitol's motion for summary judgment, reserved decision on its motion to dismiss the action pending the outcome of Leber-Krebs' state court action against Clinton, and placed this case on its suspense calendar.

In November 1983 plaintiff obtained a State Supreme Court verdict in its action against Clinton. Clinton thereafter filed for bankruptcy in July 1984, which stayed the state court proceeding. In February 1985 Leber-Krebs' action against Capitol was taken off the suspense calendar, and Capitol's motion to dismiss was granted. The district court relied on *Eisenberg*, 92 A.D.2d at 795, 459 N.Y.S.2d 788, decided on March 15, 1983, nearly a month after plaintiff commenced the instant action against Capitol. Because *Eisenberg* held that the five-day period for confirming an attachment runs from the first levy of the order *whether or not* the garnishee possesses the debtor's property, the district court judge held that Leber-Krebs' initial motion to confirm on April 2, 1982 should have been granted. Yet, because *Eisenberg* made clear that an unconfirmed attachment order was void, the district court held that Leber-Krebs could not maintain an action against Capitol for violating it.

In discussing the plaintiff's action the district court was troubled by the fact that it had been under a "mistaken impression" regarding "appropriate attachment procedures." But, the district judge did not discuss the merits of Leber-Krebs' fraud claim, nor did it explore whether Capitol had in fact falsified its garnishee statement. Rather, it held that the *Eisenberg* decision left it no choice but to allow the fraud, if any, practised by Capitol to stand,

garnishee in which the defendant has an interest, and the amounts and value of debts and property specified. If the garnishee has

money belonging to, or is indebted to, the defendant in at least the amount of the attachment, he may limit his statement to that fact.

regardless of whether Leber-Krebs' original motion to confirm had been denied in reliance on Capitol's false representations. It believed there was no remedy to redress plaintiff's grievance.

## II DISCUSSION

Leber-Krebs argues that the *Eisenberg* decision, which clarified the law during the course of this litigation, should be ignored for purposes of this lawsuit to avoid a manifestly unjust result. Plaintiff also maintains that Capitol's actions in allegedly falsifying its garnishee statement constituted a fraud upon the court; and that the district court relied upon Capitol's statement when it granted Clinton's motion to deny confirmation of the initial attachment order. Thus, Leber-Krebs urges that Capitol should not be allowed to profit from its fraud, and its action against Capitol should be allowed to proceed.

Capitol contends that the district court correctly refused to allow Leber-Krebs to sue on a void attachment order, since Capitol did not cause Leber-Krebs' loss. The *Eisenberg* decision, Capitol argues, makes clear that confirmation should have been sought and granted initially, regardless of Capitol's protestations that it held none of Clinton's property and regardless of whether or not it was in possession of the debtor's property at the time of the first levy. Hence, we are told, it was the court that erred and Capitol's statement therefore—even assuming its falsity—made no difference. The premise of this argument is that if counsel leads a court down the primrose path into error, the consequences of such are laid at the court's doorstep, without a finger being pointed at the culpable party. Such a rigorous view of the law is one we decline to adopt.

### A. Law of the Case

■ Leber-Krebs first relies on several Supreme Court cases, which stand for the proposition that on rare occasions an appellate court need not apply the law in effect at the time it renders its decision, but may apply the law in effect when the lawsuit was initiated, if to do otherwise will produce a manifestly unjust result. *See Greene v. United States*, 376 U.S. 149, 158–64, 84 S.Ct. 615, 620–24, 11 L.Ed.2d 576 (1964); *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Plaintiff then assumes that the district court's May 21, 1982 disposition of Leber-Krebs' motion to confirm—holding that a party procuring an *ex parte* attachment cannot confirm that order until the garnishee's possession of the debtor's property is demonstrated—constituted the law of this case and should be applied throughout the entire litigation. Leber-Krebs contends that to allow Capitol now to rely on the *Eisenberg* decision after allegedly intentionally defrauding it and the court in its garnishee statement, would be to allow Capitol to profit from its wrong because of an intervening change in the law.

We find little merit to this argument. The cases relied upon permit appellate courts to ignore a change in the law during the course of a litigation, when special circumstances indicate that applying an intervening change in the law will result in manifest injustice. But this case does not involve a special circumstances exception. Most important, there was not a change in the law during the course of the same litigation. Plaintiff sued Capitol in a subsequent action wholly separate from its suit against Clinton. The rule adopted by the district court in denying on ripeness grounds Leber-Krebs' motion to confirm arose out of the earlier Leber-Krebs/Clinton lawsuit. Before any decision by the district court was reached in the Leber-Krebs/Capitol lawsuit, *Eisenberg* was handed down. *Eisenberg* simply clarified decisional law construing CPLR 6211(b), but this clarification did not occur during the course of the same litigation either in the trial court or before appellate review. In order to ensure the orderly progress of judicial proceedings, the law of the case doctrine is applied to judicial determinations made in the same litigation. Thus, Leber-Krebs' reliance on the *Bradley* line of decisions to ensure for itself the continu-

ous application of pre-*Eisenberg* decisional law is misplaced.

### B. Fraud on the Court

Plaintiff's further argument focuses more closely on the primary issues to be decided on this appeal. Leber-Krebs contends that it complied with the law at every step in its attempt to enforce a judgment against Clinton and that it was thwarted in those legal efforts only because Capitol committed a fraud on the court. Support for the position that Capitol should not be allowed in this case to profit from its own fraud is found in relevant decisional law.

In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 249–50, 64 S.Ct. 997, 1002–03, 88 L.Ed. 1250 (1944), the Supreme Court held that an appellate court had the power to vacate its own judgment upon discovery that a fraud had been perpetrated upon it. *Hazel-Atlas* deliberately did not define the metes and bounds of this "fraud on the court" doctrine, but it did make clear that it has always been "characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations." *Id.* at 248, 64 S.Ct. at 1002. Courts obviously retain inherent power to ascertain whether their judgments were obtained by fraud. *See Universal Oil Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946); *Alberta Gas Chemicals, Ltd. v. Celanese Corp.*, 650 F.2d 9, 12–13 (2d Cir.1981); *see also* 7 Moore's Federal Practice ¶¶ 60.16[5], 60.33 (1979).

In addition, under Fed.R.Civ.P. 60(b) a court has authority to relieve a party from a final judgment on account of fraud, misrepresentation, or other misconduct of an adverse party if a motion to vacate that judgment is made within one year after the judgment, order, or proceeding was entered or taken. The old common law actions to obtain like relief, for example, writs of error coram nobis, coram vobis, and bills of review, have been abolished and the Rule recognizes the district court's power to entertain an independent action to relieve a party from a judgment or to set aside a judgment for fraud upon the court.

In *M.W. Zack Metal v. Intern. Nav. Corp. of Monrovia*, 675 F.2d 525 (2d Cir.), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 449, 74 L.Ed.2d 604 (1982), we held that an independent action for fraud may not be entertained if " 'there was an opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.' " *Id.* at 529, (*quoting Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 n. 2 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972)); *Marshall v. Holmes*, 141 U.S. 589, 596, 12 S.Ct. 62, 64, 35 L.Ed. 870 (1891). Leber-Krebs had no such opportunity. Had it known that Capitol had Clinton's assets, Leber-Krebs could have brought a special proceeding against the garnishee to compel the payment, delivery or transfer to the sheriff of the attached property or to secure a judgment against it. When in 1982 the district court dismissed Leber-Krebs' motion to confirm its writ of attachment as not ripe, it construed pre-*Eisenberg* law to require that result. But Leber-Krebs had no opportunity to set aside that determination until it discovered a number of months later that Capitol did allegedly possess property of Clinton's. Immediately after Capitol filed its second garnishee statement revealing payments of $100,000 to Clinton, Leber-Krebs commenced this independent action against Capitol, in the form of a special proceeding to secure a judgment against the garnishee, as explicitly authorized by CPLR 6214(d).

Concededly, this case does not fit neatly within the fraud on the court doctrine. Plaintiff is not seeking relief from the district court's judgment dated May 21, 1982, which refused to confirm plaintiff's order of attachment. Such relief would not alter the fact that no confirmation within five days had been made and, under *Eisenberg,* the attachment order would still be void. Rather, plaintiff argues that its failure to obtain initial confirmation is no reason to permit Capitol to assert that this indepen-

dent suit may not be maintained against it. This is particularly true if Capitol's fraud caused the district court to deny that initial confirmation of the attachment order.

We believe Leber-Krebs' position is correct. Fraud on the court principles, while conceived to vacate judgments induced by fraud, can easily be applied to this case. As stated in *Hazel-Atlas*, 322 U.S. at 248, 64 S.Ct. at 1002, the rule should be characterized by flexibility and an ability to meet new situations demanding equitable intervention. In tracing the development of a court's equity power to combat fraud in the enforcement of judgments, the Supreme Court recognized that the relief devised may "[take] several forms: [including] setting aside a judgment to permit a new trial, altering the terms of a judgment, or restraining the beneficiaries of a judgment from taking any benefit whatever from it." *Id.* at 245, 64 S.Ct. at 1001. In essence, our holding here merely restrains Capitol from benefiting from the district court's erroneous decision to deny Leber-Krebs' original motion to confirm based on Capitol's allegedly false garnishee statement. Although Capitol was not a party to that original proceeding, it was required under CPLR 6219 to serve a statement in compliance with the attachment order. Thus, it should not now be heard to assert the order's invalidity, if such was caused by its fraud.

C. Capitol's Reliance on New York Law

■ We examine New York law to see if it lends support to Capitol's contention that the district court correctly dismissed plaintiff's action because it cannot be sued on a void order. The mandatory five-day confirmation rule adopted in *Eisenberg* stems from a desire to protect a debtor's constitutional rights to a hearing on the merits of an *ex parte* attachment and limits the time during which a debtor's assets may be tied up by a creditor willing to wait for a garnishee to come into actual possession of the debtor's property.

Thus, *Eisenberg* construes CPLR 6211(b) as protecting a debtor's due process rights to a prompt post-attachment hearing. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *cf.*

*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *North Georgia Finishing v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Notice has now been given that orders of attachment must be confirmed within five days, regardless of whether a garnishee actually possesses the debtor's property. Yet, here, to allow this garnishee that may have given a court false information to rely upon the court's misapprehension of the law, would allow it to utilize the law to insulate itself from fraud. Neither due process nor the CPLR mandates such an inequitable result.

New York courts do not look favorably upon garnishees who play fast and loose with attachment orders. In *Graphic Offset Corp. v. Franklin Nat. Bk.*, 16 Misc.2d 382, 182 N.Y.S.2d 948 (1958), *aff'd mem.* 7 A.D.2d 967, 183 N.Y.S.2d 989 (1959), a Delaware corporation, World Wide Gift Club, Inc. also did business under the name World Wide Doll Club, Inc. It was sued as World Wide Doll Club, and the bank, which maintained an account for the corporation under the Gift Club name, was served with an order of attachment. The bank certified to the Sheriff that it had no Doll Club account and, even though the bank knew World Wide Doll Club was another name for World Wide Gift Club, it allowed the corporation to withdraw its Gift Club funds. While the issue of confirmation was not posed in that case, the New York court held the bank's shenanigans actionable. *Id.* at 383–84, 182 N.Y.S.2d 948. New York courts clearly do not countenance a garnishee trifling with a court order or mandate. In fact, such conduct, while always subject to an action brought by plaintiff, has resulted in court-imposed contempt sanctions. *See Lowenthal v. Hodge*, 120 App.Div. 304, 307–09, 105 N.Y.S. 120 (1st Dep't 1907). Thus, we conclude that defendant can derive no support for its position from New York law.

III CONCLUSION

The Supreme Court has held that if a party has used fraud to obtain a judgment,

an adverse party may, by bringing a new proceeding, invoke the power of the courts to scrutinize the conduct of the parties in the previous action. *See Marshall v. Holmes,* 141 U.S. at 599, 12 S.Ct. at 65, *quoting Johnson v. Waters,* 111 U.S. 640, 667, 4 S.Ct. 619, 633, 28 L.Ed. 547 (1884). Where fraud is found, the party that used fraud should be deprived of the benefit of the judgment and any inequitable advantage gained. *Id.,* 141 U.S. at 599, 12 S.Ct. at 65. Courts should not forfeit truth for the sake of finality, nor let the technical intricacies of the law governing attachments obscure their just administration.

Accordingly, the order dismissing plaintiff's complaint is reversed and the case is remanded to the district court for an evidentiary hearing to examine whether Capitol's first garnishee statement was fraudulent. If the district court so finds, the court is free to enter judgment in the amount plaintiff would have obtained if Capitol had filed an accurate statement and Leber-Krebs had successfully moved to confirm.