19-1031(L)
*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*

# United States Court of Appeals
# For the Second Circuit

August Term 2019

Argued: April 23, 2020
Decided: March 16, 2021

Nos. 19-1031(L), 19-1297(xap)

INTERNATIONAL TECHNOLOGIES MARKETING, INC.,

*Plaintiff-Appellant-Cross-Appellee,*

*v.*

VERINT SYSTEMS, LTD.,

*Defendant-Appellee-Cross-Appellant,*

VERINT SYSTEMS INC.,

*Defendant.*[*]

Appeal from the United States District Court
for the Southern District of New York
No. 15-cv-2457, Gregory H. Woods, *Judge.*

Before:     CALABRESI, WESLEY, and SULLIVAN, *Circuit Judges.*

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

The plaintiff appeals an order of the district court (Woods, *J.*) dismissing its breach of contract claim and denying its request for leave to file a fourth amended complaint; the defendant cross-appeals the district court's denial of its motion for sanctions related to the plaintiff's misrepresentations to the court during the litigation. Because the district court misconstrued our precedent regarding the court's inherent power to impose sanctions – which makes clear that even a single bad-faith filing may warrant monetary sanctions, regardless of whether that conduct actually misled the court – we vacate the district court's order denying sanctions and remand for proceedings consistent with this opinion. In all other respects, we affirm the district court's judgment in a separately filed summary order.

VACATED IN PART AND REMANDED.

> JAMES J. MAHON, Becker & Poliakoff, LLP, New York, NY, *for Plaintiff-Appellant-Cross-Appellee*.
>
> HOWARD I. ELMAN (Benjamin S. Litman, Yosef Rothstein, *on the brief*), Elman Freiberg PLLC, New York, NY, *for Defendant-Appellee-Cross-Appellant*.

RICHARD J. SULLIVAN, *Circuit Judge*:

This case began as a simple contract dispute between Verint Systems, Ltd. ("Verint"), an Israeli software company that develops telecommunications monitoring systems, and International Technologies Marketing, Inc. ("ITM"), a small consulting and business development firm based in Florida. Unfortunately, ITM's antics throughout the course of the litigation have raised a host of other

questions, not the least of which is how much misconduct a court must permit before enough is enough.

While we cannot provide an answer to that question for every possible scenario that might arise, we can say, definitively, that a court need not wait until it is defrauded before it may impose monetary sanctions on a party who knowingly prosecutes a frivolous claim in bad faith. That remains true even if the misbehaving litigant made only a single misrepresentation to the court. Because it appears that the district court overlooked our past precedent when it declined to impose sanctions against ITM under its inherent power, we vacate the district court's March 15, 2019 order in part and remand for further proceedings consistent with this opinion. In all other respects, we affirm the district court's judgment and orders in a separately filed summary order.

## I. Background

### A. Facts

The parties' representatives first met in the fall of 2005, when ITM pitched itself to Verint as a capable partner that could help Verint expand its footprint in the Brazilian market. Intrigued by the proposition, Verint agreed to let ITM begin searching for Brazilian telecommunications firms interested in purchasing Verint's products. ITM quickly identified a promising candidate in early 2006. At that

3

point, ITM and Verint memorialized their partnership in a written agreement, under which ITM would receive a commission based on the amount of revenue it helped Verint earn. The companies appeared to anticipate a short-lived relationship; by its terms, the agreement was to automatically expire in one year, on February 21, 2007.

A few months after it was officially retained, ITM identified another potential business partner for Verint: Suntech. In fact, Suntech presented such a compelling fit that Verint was not content to merely partner with Suntech; Verint wanted to acquire it outright. So, over the next few months, ITM switched gears and facilitated negotiations between the two companies in the hope of bringing the acquisition to fruition.

Initially, the talks progressed smoothly. Verint even provided Suntech with a letter of intent and a term sheet in December 2006, outlining the framework of a proposed acquisition. Around the same time, Verint and ITM amended their existing agreement to formalize ITM's new role as Verint's acquisition advisor.

But ITM's hopes of a major payday – a percentage of the deal's purchase price – soon took a blow. After several rounds of negotiations, Verint's enthusiasm for the transaction began to fizzle as a new acquisition target, Witness Systems,

4

caught its eye. And in February 2007, after agreeing to purchase Witness Systems,

Verint informed ITM that the Suntech acquisition was "off." J. App'x at 147.

Not long thereafter, however, Verint and Suntech began to rekindle their

negotiations. Although its agreement with Verint had by then expired, ITM

eventually resumed its role as facilitator between the transactional counterparties.

But while the renewed discussions progressed through September 2007, Verint

again got cold feet and the transaction faltered.

That is, until August 2011, when Verint finally acquired Suntech (this time,

without ITM's help). Upon discovering that the long-anticipated deal had been

struck, ITM approached Verint seeking to recover its contractual success fee.

Verint refused.

## B. Procedural History

In March 2015, ITM sued Verint, asserting various contractual and quasi-

contractual claims. Of particular relevance, ITM sought to recover more than

$350,000 in expenses under a theory of unjust enrichment (which it later restyled

as a claim for *quantum meruit*).[1] On January 27, 2016, the district court dismissed

---

[1] Under New York law, unjust enrichment and *quantum meruit* claims are analyzed together as a single quasi-contract claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

ITM's amended complaint in its entirety, reasoning that the parties' contractual relationship had expired on February 21, 2007, taking with it ITM's right to demand a contractual fee. *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.* ("*ITM I*"), 157 F. Supp. 3d 352, 365 (S.D.N.Y. 2016). But while the court dismissed several of ITM's claims with prejudice, including ITM's breach of contract claim, it permitted ITM to take another shot at amending its complaint, including its *quantum meruit* claim. *Id.* at 365–71. The district court cautioned, however, that any *quantum meruit* claim should be limited to costs ITM incurred *after* its contract with Verint expired. *See id.* at 370–71 (explaining that a party "may not recover under a quasi-contractual theory when the parties had a valid contract governing their relationship").

One month later, ITM filed a second amended complaint, asserting claims for *quantum meruit*, breach of an implied-in-fact contract, and breach of contract. Verint responded by filing motions to dismiss and for sanctions, arguing that ITM's renewal of its breach of contract claim was patently frivolous in light of the district court's previous order dismissing that claim with prejudice.

Perhaps realizing its error, ITM quickly filed yet another amended complaint, this time without the breach of contract claim. But this third amended

6

complaint was not without its own problems. ITM sought to recover $350,000 under a *quantum meruit* theory based on expenses it allegedly incurred on Verint's behalf after February 21, 2007 – the exact amount it previously claimed to have spent on behalf of Verint both before *and* after the parties' contract expired.

In April 2016, Verint again moved to dismiss and again requested sanctions under Rule 11, this time arguing that it was inconceivable that ITM's expenditures after the contract's expiration could be identical to its expenditures over a longer period. In a pre-motion conference, the district court asked ITM's then-counsel point-blank whether there was evidentiary support for his client's claimed costs; ITM's lawyer indicated that there was. So, because federal pleading standards presume the truth of all facts alleged in a complaint, the district court allowed ITM to move forward with its *quantum meruit* claim and denied Verint's Rule 11 motion.[2]

It did not take long for holes to start appearing in ITM's story. During discovery, Verint deposed Anthony Schehtman, ITM's principal. As the district court tells it, "[t]o say that Mr. Schehtman's deposition testimony contradict[ed] many of the factual predicates upon which [ITM's] quantum meruit claim [wa]s

---

[2] At the same time, however, the district court dismissed ITM's only other claim, one for breach of an implied-in-fact contract.

based would be an understatement." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.* ("*ITM II*"), No. 15-cv-2457 (GHW), 2019 WL 1244493, at *3 (S.D.N.Y. Mar. 18, 2019). For instance, Schehtman testified that, far from continuing to assist Verint's pursuit of Suntech during the post-contractual period, ITM began helping Verint's rivals and working to tarnish Verint's reputation with potential business partners. *See, e.g.*, J. App'x at 961–62 (testifying that ITM was "helping Verint's competitor give Verint a bloody nose"). Schehtman even admitted that ITM's goal was to cause Verint to "los[e] out [on] business opportunities to competitors" because he believed that such "short-term damage" would "be a catalyst for Verint to want to acquire Suntech." *Id.* at 958.

In addition, many of the expenses that ITM sought to recover bore no plausible relation to Verint or its pursuit of Suntech. For example, ITM produced expense statements for "U-haul rentals, Sirius Radio [fees], LinkedIn [memberships], duty free charges at Heathrow Airport, and a trip to California." *ITM II*, 2019 WL 1244493, at *5. And when asked about such expenses, Schehtman was often either unable to explain what they were, admitted that ITM had not actually incurred them, or indicated that ITM had incurred them while working against Verint's interests. *Id.* at *4–5. Indeed, the record was so damning that

8

ITM's current counsel – its prior counsel having withdrawn only one week after Schehtman's deposition – later informed the district court that ITM would be dropping its *quantum meruit* claim altogether.

Nevertheless, in April 2018, ITM sought leave to file a fourth amended complaint to assert brand new claims for breach of the implied covenant of good faith and fair dealing and for anticipatory repudiation based on Verint's purchase of Witness Systems. ITM's primary contention was that the Witness Systems acquisition made it all but impossible for Verint to acquire Suntech in 2007 because of certain covenants in the Verint-Witness Systems merger agreement. Verint opposed ITM's motion and sought sanctions against ITM and its current counsel under Rule 11, asserting that these new claims were plainly time-barred, and that ITM's claim concerning the implied covenant of good faith and fair dealing had previously been dismissed with prejudice. Verint filed a separate motion for sanctions against ITM and Schehtman under the district court's inherent power in light of ITM prosecuting a frivolous *quantum meruit* claim, and also requested to renew its Rule 11 motion from April 2016, which sought sanctions for the same conduct against ITM and its former counsel.

On March 15, 2019, the district court issued two orders, which granted in part and denied in part Verint's motions.[3]  In its first order, the district court declined to impose sanctions against ITM and Schehtman under its inherent power.  *Id.* at *12.  It did so not because ITM had brought its *quantum meruit* claim in good faith.  Rather, the court pointed to two facts that it determined made sanctions improper.  First, the district court noted that ITM's "conduct did not impede the ability of the [c]ourt to adjudicate the issues presented in the case."  *Id.* at *8.  Second, it reasoned that ITM had committed only "a single misrepresentation," which it deemed "insufficient" to demonstrate fraud on the court.[4]  *Id.* (internal quotation marks and citation omitted).

In the second order, the district court denied ITM's motion for leave to file an amended complaint.  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.* ("*ITM III*"), No. 15-cv-2457 (GHW), 2019 WL 1245013, at *9 (S.D.N.Y. Mar. 18, 2019).  Nevertheless, the court refused to impose sanctions against ITM and its current counsel for seeking such leave.  *See id.*

---

[3] Although dated March 15, 2019, the orders were not filed on the docket until March 18, 2019.

[4] Separately, the district court granted Verint's request to renew its motion for sanctions against ITM and its prior counsel under Rule 11 for filing the *quantum meruit* claim.  But rather than grant Verint's motion outright, the court permitted the parties to submit additional briefing on the matter.  *ITM II*, 2019 WL 124493, at *12.  This issue is still pending before the district court.

At that point, with no pending claims before it, the district court directed the clerk of court to enter judgment in favor of Verint. *Id.* ITM timely appealed.

On appeal, ITM challenges the district court's (i) January 27, 2016 order dismissing its breach of contract claim, and (ii) March 15, 2019 order denying it leave to file the proposed fourth amended complaint. Verint has cross-appealed, challenging the district court's March 15, 2019 orders, which denied Verint's motions for sanctions (i) against ITM and Schehtman under the court's inherent power for prosecuting the *quantum meruit* claim in bad faith, and (ii) against ITM and its current counsel under Rule 11 for seeking leave to file the proposed fourth amended complaint.

In this opinion, we address only the district court's decision not to award sanctions against ITM and Schehtman under its inherent power. We resolve all other issues in a contemporaneously issued summary order.

## II.    Standard of Review

We review a district court's denial of sanctions for abuse of discretion. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012); *K.M.B. Warehouse Distribs. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995). We will find such an abuse where the court's decision was the product of "an erroneous view of the law

11

or . . . a clearly erroneous assessment of the evidence." *Enmon*, 675 F.3d at 143 (internal quotation marks and citations omitted).

### III. Discussion

"[C]ourts are 'vested, by their very creation, with power to impose silence, respect, and decorum[] in their presence, and submission to their lawful mandates.'" *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). To perhaps state the obvious, this power is "not conferred by rule or statute." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Rather, it springs from "the nature of [the judicial] institution," *Chambers*, 501 U.S. at 43 (internal quotation marks and citation omitted), and enables courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Goodyear Tire & Rubber*, 137 S. Ct. at 1186 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

As part of this inherent power, a court can control admission to its bar and discipline attorneys who appear before it; "vacate its own judgment upon proof that a fraud has been perpetrated upon" it; "bar from the courtroom a criminal defendant who disrupts a trial[;]" "dismiss an action on grounds of *forum non conveniens*[;]" and *sua sponte* "dismiss a suit for failure to prosecute." *Chambers*,

12

501 U.S. at 44. And, most relevant to the case before us, a court's inherent power allows it to impose monetary sanctions against a litigant (or its counsel) for misconduct. *Id.* at 45–46. Such an award serves two ends: it "vindicat[es] judicial authority," and it makes the wronged party "whole for expenses caused by his opponent's obstinacy." *Id.* at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

Because of its potency, however, a court's inherent power "must be exercised with restraint and discretion." *Id.* at 44. When it comes to monetary sanctions, that means a court should sanction only "bad faith, vexatious[], [or] wanton[]" acts or actions otherwise undertaken for "oppressive reasons."[5] *Id.* at 45–46 (internal quotation marks and citation omitted).

One type of bad faith conduct that is often deserving of sanction is a party's decision to prosecute a knowingly frivolous claim. But as separating frivolous claims from mere zealous advocacy can be difficult, we require courts to make two findings before imposing such sanctions: first, that "the challenged claim was without a colorable basis" and, second, that "the claim was brought in bad faith,

---

[5] That said, a court need not make a finding of bad faith before sanctioning an attorney for "negligently or recklessly fail[ing] to perform his responsibilities as an officer of the court." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001); *see also United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000).

13

*i.e.*, motivated by improper purposes such as harassment or delay." *Enmon*, 675

F.3d at 143 (quoting *Schlaifer Nance*, 194 F.3d at 336). The former is satisfied where

the claim "lacks any legal or factual basis." *Wolters Kluwer Fin. Servs., Inc. v.*

*Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). And the latter may be inferred when

an action is "so completely without merit as to require the conclusion that [it] must

have been undertaken for some improper purpose." *Enmon*, 675 F.3d at 143

(internal quotation marks and citation omitted).

Here, the district court cited this two-pronged standard, but grafted onto it

additional requirements that, while perhaps relevant considerations, should not

have been given dispositive effect.

To start, the district court concluded that sanctions were not appropriate

"because [ITM's] conduct did not impede the ability of the [c]ourt to adjudicate

the issues presented in the case." *ITM II*, 2019 WL 1244493, at *8. Our precedent

is clear, however, that a court should primarily focus on the *intent* of the

potentially sanctionable conduct, not on its *effect*:

> We read *Chambers* to mean that sanctions may be
> warranted even where bad-faith conduct does not
> disrupt the litigation before the sanctioning court. This
> accords with our sanctions jurisprudence, which
> counsels district courts to focus on the purpose rather
> than the effect of the sanctioned attorney's activities. . . .

14

> That [the sanctioned law firm's] attempt to derail the [d]istrict [c]ourt proceeding was quickly thwarted by vigilant opposing counsel does not make [the firm's] purpose any less improper.

*Enmon*, 675 F.3d at 145 (citation omitted).

And even if we were to agree that some disruption must occur before sanctions are warranted – and, to be clear, we do not – that requirement would be satisfied here. ITM's prosecution of a knowingly frivolous claim not only multiplied the proceedings, but it caused the district court "to expend considerable time and effort that could have been devoted elsewhere." *ITM II*, 2019 WL 1244493, at *9. Both consequences are plainly serious enough to support a discretionary award of sanctions. *See Enmon*, 675 F.3d at 145.

Second, the district court mistakenly reasoned that ITM's misconduct was not sanctionable because "a single misrepresentation is insufficient" to justify an award of sanctions under the court's inherent power. *ITM II*, 2019 WL 1244493, at *8 (internal quotation marks and citation omitted). We disagree. A court need not wait until a party commits multiple misrepresentations before it may put a stop to the party's chicanery.[6]

---

[6] Nor do we agree that ITM committed only a single misrepresentation here. Not only did ITM file a fraudulent claim, but its former counsel confirmed that the claim had evidentiary support when directly pressed on the matter during a pre-motion conference. *ITM II*, 2019 WL 1244493,

15

For decades, we have consistently made clear that the only prerequisites to a district court imposing monetary sanctions under its inherent power is that a party advanced a colorless claim and did so for improper reasons. *See, e.g.*, *Enmon*, 675 F.3d at 143; *Wolters Kluwer*, 564 F.3d at 114; *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78–79 (2d Cir. 2000); *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2d Cir. 2000); *Schlaifer Nance*, 194 F.3d at 336; *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). Those elements can be satisfied by even a single bad-faith filing. *See, e.g.*, *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 57 (2d Cir. 2018) (upholding sanctions against a party merely for "initat[ing] th[e] lawsuit" in bad faith); *Smith v. Westchester Cty. Dep't of Corr.*, 577 F. App'x 17, 18–19 (2d Cir. 2014) (affirming sanctions against a party for filing a single motion for reconsideration because that motion had no chance of success and "was made in bad faith").

So, by primarily considering the effect of the misrepresentation, rather than the motive behind it, and by focusing on the quantity of misrepresentations, rather than on their "quality," the district court committed legal error. Indeed, the district court appeared to assume that it could not sanction ITM unless ITM

---

at *2. So, at the very least, ITM caused two misrepresentations to be made to the district court, albeit on the same topic.

committed "fraud on the court." *See ITM II*, 2019 WL 1244493, at *8–9. While a finding that a litigant has successfully defrauded the court would no doubt be sufficient grounds for imposing monetary sanctions, it is not necessary. *Compare Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988) (concluding that conduct must actually "interfere[] with the judicial machinery" to constitute "fraud on the court"), *with Enmon*, 675 F.3d at 145 (holding that "sanctions may be warranted even where bad-faith conduct does not disrupt the litigation before the sanctioning court"), *and Va. Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 114, 123 (2d Cir. 2017) (concluding that while the plaintiff did not "commit[] a fraud on the court," sanctions in "the amount of costs and attorney's fees" could nevertheless still be awarded on remand "to compensate appellees for the failure of [the plaintiff] or its attorneys to make timely disclosures").[7]

To be clear, the effect of and number of misrepresentations that a party makes are perfectly acceptable data points for a court to consider in determining whether – and, perhaps more importantly, *what* – sanctions are warranted. *See*

---

[7] It bears noting that the fraud on the court doctrine is primarily reserved for cases where a litigant is asking the court to "vacate [a] judgment[] induced by fraud." *See Leber-Krebs, Inc. v. Capitol Recs.*, 779 F.2d 895, 900 (2d Cir. 1985). But the doctrine can be applied in other contexts as "the rule [is] characterized by flexibility and an ability to meet new situations demanding equitable intervention." *Id.*

17

*Chambers*, 501 U.S. at 44–45 (recognizing that the severity of the sanction must match the seriousness of the misconduct). But neither fact should be given dispositive weight. To hold otherwise would not only upset decades of precedent, but would also sap courts of the ability to effectively control their dockets when parties attempt to assert knowingly frivolous claims.

In stating all this, we are simply clarifying what the law is. We are not, of course, prejudging whether sanctions should be imposed in this case. That remains within the careful discretion of the district court.

## IV. Conclusion

For the reasons set forth above, we **VACATE IN PART** the district court's March 15, 2019 order denying monetary sanctions under its inherent power, and **REMAND** the case to the district court to reconsider Verint's request for sanctions in light of this opinion.