16-2363-cv (L)
*Huebner, et al. v. Midland Credit Mgmt., et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2017

(Argued: November 9, 2017          Decided: July 19, 2018)

Nos. 16-2363-cv, 16-2367-cv

_____

LEVI HUEBNER, on behalf of himself and all other similarly situated consumers,

*Plaintiff-Appellant,*

POLTORAK PC, ELIE C. POLTORAK,

*Interested Party-Appellants,*

-v.-

MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC.,

*Defendants-Appellees.*

_____

Before:      LEVAL, LIVINGSTON, and CHIN, *Circuit Judges*.

Levi Huebner, Elie C. Poltorak, and Poltorak PC appeal a final judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*). Huebner sued Midland Credit Management, Inc. and Midland Funding LLC. (collectively "Midland"), alleging that they violated the Fair Debt Collection

1

Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Huebner alleged that when he called Midland to dispute his debt, Midland's representative harassed him by asking about the nature of his dispute. Huebner also alleged that, after his call, Midland did not report the debt as disputed to credit reporting agencies. The district court concluded that Huebner failed to produce any evidence raising a material issue as to either claim. Additionally, the court sanctioned: (1) Poltorak personally for misleading the court during the initial status conference; (2) Huebner for disregarding a protective order; and (3) both Huebner and Poltorak PC for needlessly multiplying the proceedings. Huebner, Poltorak, and Poltorak PC argue on appeal that the court erred in granting summary judgment for Midland and abused its discretion in sanctioning them. We disagree. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR PLAINTIFF-APPELLANT:                     LAWRENCE KATZ, Valley Stream, NY, *for Levi Huebner*.

FOR INTERESTED PARTY-APPELLANTS:             Elie C. Poltorak, Poltorak PC, Brooklyn, NY, *pro se*.

FOR DEFENDANTS-APPELLEES:                     ANDREW M. SCHWARTZ, Marshall Dennehey, Warner, Coleman & Goggin, P.C., Philadelphia, PA (Matthew B. Johnson, New York, NY, *on the brief*), *for Midland Credit Management, Inc., Midland Funding LLC*.

FOR AMICUS CURIAE:                           Brian Melendez, Dykema Gossett PLLC, Minneapolis, MN, *for ACA International.*

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Plaintiff-Appellant Levi Huebner ("Huebner") is an attorney who has litigated several cases under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692, *et seq.*, which, among other things, prohibits debt collectors from using "false, deceptive, or misleading representation[s] . . . in connection with the collection of any debt," *id.* § 1692e. In October 2013, Huebner called Defendant-Appellee Midland Credit Management, Inc. ("Midland") to dispute a $131 debt that it had tried to collect from him.[1] Huebner surreptitiously recorded the call. Asked why he disputed the debt, Huebner would say only that the debt was "nonexistent." J.A. 371. After repeatedly declining to clarify what he meant, Huebner said he would call Midland back after reviewing his "files." *Id.* at 372. He filed this lawsuit instead.

Huebner's first amended complaint alleged that the Midland representative told him he could dispute his debt only in writing and then only if he gave cause for his dispute. Huebner's then-attorney, Interested Party-Appellant Elie C. Poltorak ("Poltorak"), repeated this allegation in a January 28, 2015 letter to the district court. During an initial status conference, Poltorak further assured the

---

[1] The record indicates that Defendant-Appellee Midland Funding LLC purchased the debt and placed it with Midland Credit Management, Inc. for servicing. Huebner purported to contest this fact below but, as the district court correctly noted, he raised no material issue as to the point. In any event, it is immaterial which of the two affiliated defendants technically owned the debt. For simplicity's sake, we will refer to both defendants collectively as "Midland."

district court that Huebner's recording would show that Midland had told him that he could not dispute his debt orally.   But upon listening to the recording of Huebner's call, Judge Cogan of the United States District Court for the Eastern District of New York learned that this allegation was false.   The court sanctioned Poltorak $500 for failure to participate in the initial status conference in good faith.

To keep his case alive, Huebner amended his complaint twice more.   His third amended complaint ultimately alleged that Midland had made multiple false or misleading representations in violation of 15 U.S.C. § 1692e.   Concluding that Huebner had not raised a material issue of fact as to any of his claims, the court granted summary judgment for Midland.   It also ordered Huebner and Poltorak's law firm, Interested Party-Appellant Poltorak PC, to pay some of Midland's legal fees because, the court determined, Huebner had tried to trick Midland into violating the FDCPA during his initial call; his claim was meritless and prosecuted in bad faith; and both he and Poltorak PC had needlessly multiplied the proceedings with, among other things, a baseless motion for recusal and a pretrial motion filed in flagrant disregard of the terms of the parties' joint protective order.

Huebner, Poltorak, and Poltorak PC now appeal the district court's grant of

4

summary judgment and three separate sanctions orders issued over the course of this litigation. For the reasons stated below, we conclude that the district court did not err in granting summary judgment, nor did it abuse its discretion in sanctioning Huebner, Poltorak, and Poltorak PC. The judgment below is therefore AFFIRMED.

## BACKGROUND

### I. Factual Background[2]

In August 2013, Midland sent a collection letter to Huebner seeking to collect $131.21 from him. Verizon had originally billed Huebner for this sum in connection with work done on Huebner's phone line, but Huebner had refused to pay, advising Verizon that he should not have been charged for the work. Verizon told him that it would remove the charge from his invoice. On October 17, 2013, Huebner called Midland regarding the debt and secretly recorded the phone call. Huebner asked how he could dispute the debt. He was transferred to an employee named Emma Elliott ("Elliott"). The merits of this case turn

---

[2] Because we are reviewing this case in part on appeal from a grant of summary judgment to Midland, the facts outlined below as to Huebner's substantive claims are either undisputed or viewed in the light most favorable to Huebner. *See, e.g.*, *Raspardo v. Carlone*, 770 F.3d 97, 111 (2d Cir. 2014).

largely on their conversation.

Huebner began by asking, "[W]hat do I have to do if I want to dispute the debt[?]" J.A. 369. "Just advise me what your dispute is[,] and I can see if I can assist you with that," responded Elliott. *Id.* Rather than answer, Huebner pivoted to a different question, "[H]ow do I get it off my credit report?" *Id.* Elliot replied, "Well, we need to . . . work with what your dispute is in order to remove it, sir. So why are you disputing?" *Id.* Huebner repeated his question: "I just can't get it off my credit report[?]" *Id.* "No," replied Elliott. "We just can't delete an account because the consumer wants it deleted. We need to know why [you] want it deleted and what [the] dispute is. I can assist you with your dispute here, sir." *Id.* at 369–70. Huebner tried a third time: "I can't get it off my credit card—my account without paying it?" *Id.* at 370. "That's not what I said, sir," Elliott corrected him. "I need to know what your dispute is before I can just delete it for you. . . . Why is it that you want to dispute it?" *Id.*

At last, Huebner answered her (in a manner of speaking): "Because it is a nonexistent debt." *Id.* Elliott asked what he meant by "nonexistent" and even suggested answers Huebner might give her: "Did you already pay it with Verizon? Did you never have Verizon?" *Id.* Huebner claimed not to understand what

6

she meant and declined to elaborate, eventually telling Elliott he would call her back after he reviewed his "files" to see if he could "find anything." *Id.* at 372. Elliott asked whether Huebner still wanted to dispute the debt. Huebner responded, "I told you I dispute it." *Id.* at 373. "But," Elliott said again, "[y]ou are just saying you are disputing. I need to know what you are disputing." *Id.*

Restating that the debt was "nonexistent" once more, Huebner then countered, "If you're telling me[] you are not going to take my dispute, that's fine. I'm just going to try to see if I can get more information." *Id.* at 373–74. No, insisted Elliott, "I am trying to help you with your dispute, sir, but you are not really helping me help you." *Id.* at 374. Shortly after, Huebner ended the call, saying that he might call back with "more information." *Id.* He never did.

According to Midland's internal procedures for managing debt disputes, when a consumer calls Midland to challenge a debt, Midland may mark the debt as "disputed" and report it as such to the credit reporting agencies while Midland attempts to confirm its validity. But sometimes resolving a difficult dispute is just not worth it, in which case, Midland will code the disputed account with the number "289." This denotes that Midland has deleted the account, that Midland will cease all collection, and that the credit reporting agencies will be informed of

this.

The day Huebner called, Midland marked Huebner's account with "289" and sent advisories to the major credit reporting agencies requesting that Huebner's debt be deleted from his credit reports. Midland wrote Huebner a letter informing him that it had deleted his debt, would no longer collect it, and that Midland had informed the credit reporting agencies that they should delete the debt as well.[3]

## II. Procedural History

A year later, Huebner sued Midland in the United States District Court for the Eastern District of New York (Cogan, *J.*), alleging that Midland violated the FDCPA. According to Huebner's first amended complaint, Elliott told him "that he could not orally dispute" his debt but must do so in writing and "that he must have a reason to dispute a debt." J.A. 51. Huebner sought to represent all consumers who had undergone similar treatment in a class action.

---

[3] Huebner alleges that Midland never sent him this letter and did not, in fact, inform the credit agencies that they should delete the debt. We agree with the district court that Huebner has failed to create a genuine dispute of material fact concerning this matter. *See* note 5, *infra.*

## A

During the court's initial status conference, Poltorak, Huebner's counsel, told the court that Huebner's case was based exclusively on the recorded conversation and on the allegation that Elliott had told Huebner that he must dispute his debt in writing.  Judge Cogan listened to the recording and discovered that Elliott had said nothing of the sort.  Concluding that Huebner and Poltorak had misrepresented Huebner's call, which had "all the earmarks of a setup," the court ordered Huebner and Poltorak to show cause why the "action should not be dismissed, with fees [and] costs awarded under 15 U.S.C. § 1692k(a)(3), and sanctions issued pursuant to Rule 11."  *Huebner v. Midland Credit Mgmt., Inc.*, 85 F. Supp. 3d 672, 675 (E.D.N.Y. 2015).

Huebner and Poltorak moved to disqualify Judge Cogan.  As evidence of the judge's purported bias, Huebner and Poltorak pointed primarily to the judge's ownership of a few shares in an exchange-traded fund, which held some shares of Midland's parent company Encore Capital Group, Inc.  As to sanctions, Poltorak claimed that he "ha[d] no recollection" of making the no-verbal-disputes-allowed misrepresentation during the Initial Status Conference.  J.A. 192 n.3.  Huebner and Poltorak further insisted that dismissal was not proper because they had a

9

new theory for relief: that Huebner never received a letter from Midland informing him that it had stopped collection on his debt.

In a May 1, 2015 decision and order, the district court denied the recusal motion. *Huebner v. Midland Credit Mgmt., Inc.*, No. 14 CIV. 6046 (BMC), 2015 WL 1966280 (E.D.N.Y. May 1, 2015). The judge's purported financial interest, $9 total, did not create a conflict because "ownership in a mutual or common investment fund that holds securities," like the exchange-traded fund at issue, does not create a conflict of interest "unless the judge participates in the management of the fund," according to Canon 3C(3)(c)(i) of the Code of Conduct for United States Judges and the Judicial Conference's Committee on Codes of Conduct Advisory Opinion No. 106 (2014). *Id.* at *2–*3.

Next, the court sanctioned Poltorak $500 under Fed. R. Civ. P. 16(f)(1)(B) for failure to participate in the initial status conference in good faith. Poltorak had initially "raised one claim and one claim only—that the recorded conversation between plaintiff and defendant's agent would show that defendant advised plaintiff that he could only dispute his debt in writing, not orally." *Id.* at *6. But after the status conference, Poltorak raised "new allegations that [were] not recently discovered, [were] relevant, and would have materially changed the

10

posture of this case had they been disclosed at the proper time," thus frustrating the aim of the conference procedure to help cases proceed expeditiously. *Id.* The court nonetheless did not dismiss the action but instead scheduled a conference to plan discovery on Huebner's new theory. *Id.* at *7.

**B**

Three months and two amended complaints later, the district court approved the parties' joint protective order, which set out procedures for preserving documents' confidentiality. Any letter or memorandum that cited a protected document was to be filed under seal. A party who wanted to challenge a document's designation as "confidential" was to attempt to resolve the dispute with the other party first. If the parties could not resolve it between themselves, the challenging party could then ask the court to resolve it after ten days.

On November 4, 2015, Huebner's counsel wrote the court to outline contested areas of discovery. This letter, which cited Midland's confidential information, was filed on the court's open docket. The court ordered the letter sealed and warned the parties that it would sanction them if they failed to resolve outstanding discovery disputes. Huebner's counsel later requested, without first consulting with defense counsel, that the court revoke the confidential

11

designations of certain documents. On November 13, 2015, the court imposed a $350 sanction on Huebner under Fed. R. Civ. P. 16(f)(1)(C) for filing a frivolous motion by failing to follow the protective order's procedures for challenging documents' confidential designations.

C

The district court granted Midland's motion for summary judgment after almost a year of discovery. *See Huebner v. Midland Credit Mgmt., Inc.*, No. 14 CIV. 6046 (BMC), 2016 WL 3172789 (E.D.N.Y. June 6, 2016). Although Huebner's third amended complaint had outlined four distinct claims for relief, his claims had essentially boiled down to just two theories by summary judgment. First, he argued that Elliott's questions about the nature of his dispute led him to believe that he could not dispute his debt without cause, in violation of 15 U.S.C. §§ 1692e(8) and 1692e(10). Second, Huebner alleged that Midland reported his debt to credit reporting agencies without mentioning that the debt was disputed, in violation of 15 U.S.C. §§ 1692e(5), 1692e(8), and 1692e(10), and also sent him a letter falsely claiming that Midland notified the credit reporting agencies that the debt was disputed, thereby violating 15 U.S.C. § 1692e(2)(A).

The district court rejected both arguments. The district court explained

12

that the FDCPA does not make it illegal to ask a consumer questions about the nature of his dispute when the consumer calls to lodge one. Requesting that sort of information can help both the collector and the consumer resolve the dispute faster. To be sure, it might be unlawful to badger a consumer with harassing or browbeating questions "to deter him from disputing his debt." *Huebner*, 2016 WL 3172789 at *5. But here, it was Huebner, not Elliott, who was "bobbing and weaving, evading the questions and harassing the collection agent, who was just trying to do her job, find out what the problem was, and perhaps even resolve the dispute." *Id.* The court then concluded that no material issue of fact had been raised as to whether Midland informed the credit reporting agencies that the debt was deleted, and the record showed that deleted debts are a subset of disputed debts.[4] The court entered final judgment on June 6, 2016.

## D

On June 13, 2016, Midland moved for the district court to sanction Huebner and Poltorak PC under 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1927, and the court's inherent authority for pursuing this litigation in bad faith. Specifically, Midland

---

[4] The court separately held that, even if Huebner had not lost on the merits, it would have declined to certify Huebner's proposed class. *Huebner*, 2016 WL 3172789, at *7–10.

sought to recover "all reasonable costs and fees it expended in defending" Huebner's suit. J.A. 1082. On November 10, 2016, the court granted Midland's motion in part. *See Huebner v. Midland Credit Mgmt., Inc.*, No. 14 CIV. 6046 (BMC), 2016 WL 6652722 (E.D.N.Y. Nov. 10, 2016). The court first noted that Poltorak PC's conduct was sanctionable under 28 U.S.C. § 1927 "because it pursued a claim that had no legal basis, and it acted in bad faith." *Id.* at *4. What is more, Poltorak PC had "unnecessarily multiplied the proceedings" with its "baseless motion for recusal," "frivolous motion to remove certain confidentiality designations," and frequent pre-motion conference letters that exceeded the court's page limit, all in disregard of Midland's warnings that it would seek fees and costs if the litigation continued. *Id.* at *4.

The court also ordered Huebner to pay fees under 15 U.S.C. § 1692k(a)(3) and the court's inherent authority to sanction. *Id.* at *5. Not only did Huebner— a lawyer so experienced with the FDCPA that he "whispered virtually every question into his attorney's ear" during a deposition, *id.* at *5 n.3—change his legal theory several times, he also "attempt[ed] to entrap [Elliott] into committing an FDCPA violation" for the purpose of pursuing this lawsuit, *id.* at *5. Indeed, Huebner suggested in his opposition to sanctions that he had called Midland not

14

to dispute his debt, but rather to "test[]" its FDCPA compliance.    *Id.* at *5.

But Midland also deserved some blame, the court determined, because it "did not take its discovery obligations as seriously as it should have," having delayed document production several times.    *Id.* at *6.    "Under these circumstances, a substantial sanctions award would only further distort what should have been a minor litigation."    *Id.*    The court therefore ordered Huebner and Poltorak PC, jointly and severally, to pay only "the attorneys' fees and costs incurred in connection with [Midland's] motion for sanctions and some portion of [its] attorneys' fees and costs incurred in connection with opposing [Huebner's] class certification motion."    *Id.*    On December 23, 2016, after reviewing Midland's bill of fees, the court further reduced the award to only the fees that Midland incurred in connection with its motion for sanctions.    This number was ultimately calculated as $9,850, less than a tenth of the full attorney's fees and costs that Midland incurred over the course of the litigation.

## DISCUSSION

On appeal, Huebner—as well as Poltorak, and Poltorak PC, who have joined this case as interested parties—challenge the district court's June 6, 2016 final judgment and its three sanctions orders.    For the reasons that follow, we AFFIRM

the judgment of the district court and its sanctions orders.

## I

We first address the district court's grant of summary judgment to Midland. "We review a grant of summary judgment *de novo*, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Blackman v. New York City Transit Auth.*, 491 F.3d 95, 98 (2d Cir. 2007) (per curiam) (quoting *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir. 2003)). "Summary judgment is appropriate only if it can be established 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Sheppard*, 317 F.3d at 354–55 (quoting Fed. R. Civ. P. 56(c)). Huebner argues on appeal that the district court erred in granting summary judgment on each of his two principal theories under the FDCPA: (1) that Elliott's questions about the nature of his credit dispute amounted to a "misleading" communication about his debt; and (2) that Midland failed to report to the credit reporting agencies that he had "disputed" the debt. For the following reasons, we disagree.

## A

Section 1692e of the FDCPA prohibits all "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Apart

16

from this blanket ban, § 1692e(8) more specifically renders it unlawful for a debt collector knowingly to communicate (or threaten to communicate) false credit information, while § 1692e(10) bars "deceptive means . . . to obtain information concerning a consumer." When interpreting § 1692e, we test whether a communication is "deceptive" by asking how the "least sophisticated consumer" would interpret it. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012)). This "is an objective standard, designed to protect all consumers, 'the gullible as well as the shrewd.'" *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008)).

Huebner's first theory of liability is that Midland violated § 1692e when Elliott, responding to Huebner's call, supposedly "overwhelm[ed]" him with "hassl[ing]" questions as to why he wished to dispute his debt. Br. for Pl.-Appellant at 38. This sort of questioning, he contends, misleads consumers into believing that they cannot dispute their debts without explaining the nature of their dispute, deters them from disputing their debts in violation of § 1692e(8), and allows collectors "to improperly extract information concerning the consumer," in violation of § 1692e(10). *Id.* In short, according to Huebner, as soon as he said

the words "I want to dispute the debt," Elliott was obligated to record the dispute and end the conversation; she thus violated the FDCPA when she asked any follow-up questions inquiring into the nature of Huebner's dispute. We disagree.

Like the district court, we assume without deciding that at some point, a debt collector's questions about the nature of a consumer's dispute could become sufficiently inquisitorial to violate the FDCPA. But no reasonable jury could conclude that Elliott's questions were misleading or abusive in any way. *See, e.g.*, *Ellis*, 591 F.3d at 135 ("While protecting those consumers most susceptible to abusive debt collection practices, this Court has been careful not to conflate lack of sophistication with unreasonableness."). The "least sophisticated consumer" would have interpreted Elliott not as threatening Huebner, or even conveying false information about his debt, but rather as endeavoring to learn more about Huebner's dispute so that Midland could resolve it. After all, Huebner had asked Elliott how he could "get [the debt] off [his] credit report." J.A. 369. Had she simply accepted his dispute and hung up the phone at that point, the debt would have stayed on his report pending a determination of the validity of the debt, rather than been deleted. And despite Huebner's purported misunderstanding

18

of Elliott's basic questions throughout the call, Elliott remained patient, going so far as to feed him possible answers to her questions. *See Ellis*, 591 F.3d at 135 (explaining that, although a "hypothetical least sophisticated consumer" lacks "the sophistication of the average, everyday, common consumer," he is "neither irrational nor a dolt" (internal quotation marks omitted) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). Finally, even if Huebner had been at all confused about the status of his credit dispute when he ended the call, Midland sent him a letter that day telling him that his debt had been deleted.[5]

We thus agree with the district court that Huebner failed to raise a material issue on the theory that Midland violated § 1692e when Elliott politely asked Huebner what he meant when he said that his debt with Verizon was "nonexistent." *See id.* ("[T]he FDCPA does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices.'" (quoting *Jacobson*, 516 F.3d at 90)); *Jacobson*, 516 F.3d at 90 (noting that our "least sophisticated consumer" objective test "protects debt collectors from unreasonable constructions of their communications"). The district court properly concluded

---

[5] As mentioned earlier, Huebner alleged below that Midland never sent him this letter, but on the evidence in the record, a reasonable jury could only find that Midland sent the letter.

that there were no genuine questions of fact as to whether Elliott misled Huebner with her questions, and was right to grant summary judgment to Midland on this issue.

**B**

Huebner next argues that Midland violated § 1692e(8), which requires debt collectors "to communicate that a disputed debt is disputed," by failing to so inform the credit reporting agencies. Nothing in the record, however, supports this meritless allegation either. Midland marked Huebner's debt with the code "289" the day he called, meaning that it deleted the account. Midland also sent several messages to the credit reporting agencies telling them to delete the debt, as well as a letter to Huebner informing him of this. Huebner has not pointed to any record evidence that creates a material question of fact on these issues.[6] As a result, we hold that summary judgment was also properly granted as to Huebner's second claim for relief.[7]

---

[6] For the first time in his reply brief, Huebner argues that there is a legally significant difference between informing a credit reporting agency that a debt is "disputed" and instructing the agency to delete the debt. Whatever the merits of Huebner's argument, we need not address it. *See McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005) (declining to consider "arguments not raised in an appellant's opening brief, but only in his reply brief").

[7] We need not consider Huebner's challenge to the district court's denial of class certification because we hold as a matter of law that Huebner did not suffer a legally

## II

We next review the district court's sanctions orders.   As discussed above, the district court sanctioned:

(1) Poltorak under Federal Rule of Civil Procedure 16(f)(1)(B) for failing to participate in the initial status conference in good faith;

(2) Huebner under Rule 16(f)(1)(C) for breaching the district court's protective order;

(3) Poltorak PC under 28 U.S.C. § 1927 for unreasonably multiplying the district court's proceedings; and

(4) Huebner under 15 U.S.C. § 1692k(a)(3) and the district court's inherent authority for pursuing a frivolous legal claim in bad faith.

We review the imposition of sanctions for abuse of discretion.   *See Virginia Properties, LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113 (2d Cir. 2017).   "An abuse of discretion occurs when a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions."   *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (quoting *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (quotation marks

---

cognizable injury.   *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks omitted) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977))).

and alterations omitted)). When a lower court sanctions a litigant for bad faith, the court must outline its factual findings with "a high degree of specificity." *Virginia Properties*, 865 F.3d at 113 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982)). But more often than not, "the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." *Id.* (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000)).

## A

Poltorak first argues that the district court abused its discretion when it sanctioned him $500 under Rule 16(f)(1)(B). Rule 16(f)(1)(B) allows a district court to sanction a party for failing to participate "in good faith" in a pretrial conference. Rule 16(f)'s "explicit reference to sanctions" reflects the Rule's intention to "encourage forceful judicial management." Fed R. Civ. P. 16(f) advisory committee's note to 1983 amendment. It vests a district court with "discretion to impose whichever sanction it feels is appropriate under the circumstances." *Id*. This sanctioning power accords with a district court's broader "'inherent power' and responsibility to manage [its] docket[] 'so as to

22

achieve the orderly and expeditious disposition of cases.'" *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) (per curiam) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). "In deciding whether a sanction is merited, the court need not find that the party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." *See* 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1531 (3d ed. 2010).

Here, Poltorak had informed the court that the case turned on Elliott's telling Huebner that she would only accept disputes made in writing. Elliott, of course, said no such thing. Ordered to show cause why he should not be sanctioned, Poltorak denied having made the misrepresentation, even though Huebner's first amended complaint and Poltorak's statements in a January 28, 2015 pre-conference letter made the very same allegation. Then Poltorak changed the subject, moving to recuse Judge Cogan and alleging for the first time that Midland failed to tell credit reporting agencies that the debt was disputed. Because Poltorak's bait-and-switch routine delayed the litigation, the court sanctioned him $500. *See* Fed. R. Civ. P. 16(a) (explaining that pretrial conferences are meant to "expedit[e] disposition of the action," "discourag[e] wasteful pretrial activities," and "facilitate[] settlement"); *see also* 6A Charles Alan

23

Wright *et al.*, *Federal Practice and Procedure* § 1531 (3d ed. 2010) (describing orders to pay fees or costs under Rule 16(f) as "[l]ess drastic sanctions").

On appeal, Poltorak and Huebner suggest that any references to a "writing" were inadvertent and that, importantly, they never changed positions as to their legal theory. Huebner points out that both his first amended complaint and his third amended complaint allege that Elliott refused to accept his dispute unless he explained it. The third amended complaint, he asserts, is altogether in line with the first, but is just more specific in explaining that Elliott refused to acknowledge his dispute by asking him questions about it. We disagree.

As the district court observed, Poltorak's January 28, 2015 letter "raised one claim and one claim only—that the recorded conversation between plaintiff and defendant's agent would show that defendant advised plaintiff that he could only dispute his debt in writing, not orally." *Huebner*, 2015 WL 1966280, at *6. Poltorak's representation hardly appears inadvertent, since it can also be found in the first amended complaint. *See* J.A. 51 (alleging that Elliott "stated to the Plaintiff that he could not orally dispute the debt"). It does not hint at the theory that simply asking any follow-up questions posed a problem. Nor, for that matter, does the first amended complaint allege that Midland failed to report his

24

debt as disputed to the credit reporting agencies: Huebner and Poltorak made this argument only after the court learned that their no-verbal-disputes claim was false. We therefore do not believe it was clearly erroneous for the district court to conclude that Poltorak "intentionally misl[ed] the [c]ourt and defendant as to his theory of the case," *Huebner*, 2015 WL 1966280, at *7, and we discern no abuse of discretion in the district court's decision to sanction Poltorak under Rule 16(f)(1)(B).

**B**

We next address Huebner's contention that the district court erred in sanctioning him on November 13, 2015 under Rule 16(f)(1)(C) for breaching the protective order. *See* Fed. R. Civ. P. 16(f)(1)(C) (authorizing courts to sanction parties who fail to "obey a . . . pretrial order"). Under the district court's August 2015 protective order, the parties were forbidden from quoting from confidential material in documents filed on the open docket. A party who wanted to challenge a document's designation as "confidential" was supposed to try to resolve the dispute with the other party first. If the parties could not resolve the dispute in ten days, the challenging party could ask the court to step in. In November 2015, Huebner filed a letter with the court that sought to challenge a

25

document's confidential designations without first consulting Midland. Concluding that Huebner's letter was frivolous because he had ignored the protective order's procedures, the court sanctioned him $350.

Huebner's argument is not entirely clear, but he seems to believe that because the district court did not give him an opportunity to withdraw the offending submission, he was denied fair "notice of the particular sanctions sought." *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 270 (2d Cir. 1999). But attorneys "have no absolute right 'to be warned that they disobey court orders at their peril.'" *Id.* (quoting *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d Cir. 1991)); *see also Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 102 (2d Cir. 1997) ("As a general rule, a court is not obliged to give a formal warning that sanctions might be imposed for violation of the court's orders."). What is more, this was Huebner's second violation of the protective order in eight days: on November 4, he had filed a letter on the court's open docket quoting from confidential documents. That same day, the court sealed Huebner's letter and warned the parties that failure to resolve discovery disputes could lead to sanctions. The district court's November 13 imposition of sanctions consequently "was, or should have been, entirely foreseeable to" Huebner.

26

*Reilly*, 181 F.3d at 270; *see also Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014) (affirming a sanctions order in part because the district court had given the litigant fair warning).   We therefore discern no abuse of discretion in the district court's decision.

## C

We next address the district court's decision to sanction Poltorak PC under 28 U.S.C. § 1927.[8]   Section 1927 allows a court to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   This statute "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics," and provides courts with a cudgel to use, in their discretion, "to deter unnecessary delays in litigation." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8).   "To impose sanctions under [§ 1927], a court must find clear evidence that (1) the offending party's claims were entirely without color,

---

[8] A court may sanction a law firm under § 1927 for the acts of its attorneys.   *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147–48 (2d Cir. 2012).

and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). A court may infer bad faith when a party undertakes frivolous actions that are "completely without merit." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000) (quoting *Int'l Bhd. of Teamsters*, 948 F.2d at 1345).

Here, the district court cited numerous frivolous and vexatious actions by Poltorak PC attorneys over the course of this litigation. Poltorak himself, for example, had misrepresented to the court that Elliott told Huebner that he could only dispute his debt in writing. After the district court pointed this out, Poltorak moved to recuse Judge Cogan, citing the judge's ownership stake in a common investment fund, even though Canon 3C of the Judicial Code of Conduct and Advisory Opinion 106 expressly state that this sort of financial interest does not create a conflict. Poltorak PC also later changed its theory of the case, arguing first that Elliott, by trying to clarify Huebner's bewildering answers to her questions, had somehow misled him, and second that Midland failed to report Huebner's debt properly to the credit reporting agencies. At summary judgment,

28

the district court correctly concluded that the first claim "had no basis in the FDCPA," *Huebner*, 2016 WL 6652722, at *4, and that the second was plainly untrue. It also noted that Poltorak PC time and time again filed letters exceeding the court's page limit and ignored procedures set out in the court's protective order. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–53 (1991) (upholding "the assessment of attorney's fees as a sanction for . . . disobedience of the court's orders and the attempt to defraud the court itself"). The district court thus had good reason to conclude that Poltorak PC "unreasonably and vexatiously" multiplied the proceedings in this case under 28 U.S.C. § 1927. *Kim*, 884 F.3d at 106.

Poltorak PC and Huebner raise two principal challenges to the district court's § 1927 fee award, neither of which we find convincing. First, they both argue that their principal claim for relief—that asking any questions about the nature of a consumer's dispute is a "misleading" statement under the FDCPA— was not frivolous because it turns on a question of law that was previously "undecided in this Circuit." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 97 (2d Cir. 2010). But a legal theory may be frivolous even if we have never said so before. *See, e.g., Gollomp v. Spitzer*, 568 F.3d 355, 372 (2d Cir. 2009) (upholding a district court's conclusion that a plaintiff's argument was frivolous when the

29

plaintiff failed to cite any "on point" cases in support of his legal theory). And the district court found that "any reasonable reading of [Huebner]'s recorded call" with Midland would show that he was specifically "trying to trick [Midland] into *not* complying with the FDCPA." *Huebner*, 2016 WL 3172789, at *3 (emphasis in original). We see nothing clearly erroneous about this finding, and thus nothing clearly erroneous about the district court's conclusion that Poltorak PC knew or should have known that Huebner's suit was devoid of merit. *See, e.g., Enmon*, 675 F.3d at 143 ("[A] claim is entirely without color when it lacks any legal or factual basis." (internal quotation marks omitted) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999))). But even if this claim were not frivolous, it would not have been an abuse of discretion to award fees in light of Poltorak PC's "oppressive tactics" at the initial status conference and "willful violations of court orders." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986).

Second, because the district court did not fully grant Midland's motion for sanctions, which requested that the court award its total fees and costs, Huebner argues that this motion was meritless. And so, he contends, it was an abuse of discretion to impose a fee award that reimbursed Midland for preparing this

30

motion. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (holding that courts should not award fees under 42 U.S.C. § 1988 to plaintiffs' lawyers who achieve "only partial or limited success"). But Midland's motion was not meritless. The court agreed with Midland that Poltorak PC should be sanctioned for their bad faith conduct; it just declined to give Midland as large a sanction as it requested. *See Enmon*, 675 F.3d at 148 (upholding a sanctions award for the cost of litigating a sanctions motion because the motion was "well founded," even though the district court "denied [it] in part"). We therefore conclude that the district court did not abuse its discretion in sanctioning Poltorak PC under 28 U.S.C. § 1927.

**D**

Finally, we examine the district court's decision to sanction Huebner under 15 U.S.C. § 1692k(a)(3) and its inherent authority. Section 1692k(a)(3) allows a district court to sanction a litigant for bringing an FDCPA suit "in bad faith and for the purpose of harassment." A court may also sanction a litigant pursuant to its inherent authority "if there is clear evidence that the [litigant's] conduct" was "(1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *see also Chambers*, 501 U.S. at 46 (holding that such sanctions "vindicat[e] judicial authority

31

without resort to the more drastic sanctions available for contempt of court" (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

Here, the court sanctioned Huebner under § 1692k(a)(3) and its inherent authority for the same reasons as Poltorak PC, noting that, as an attorney experienced in FDCPA litigation, Huebner played a substantial role in crafting his case's litigation strategy. Huebner has not denied, for example, that at one point he fed his attorney all the questions he asked at a deposition. Huebner also suggested in his opposition to sanctions that he had called Elliott to "test" Midland's FDCPA compliance. The district court interpreted this as an admission that Huebner had been purposefully evasive during the call in an effort to provoke an FDCPA violation, and we see no clear error in this determination. The district court thus did not abuse its discretion in determining that Huebner's decision to initiate this lawsuit "was meritless and brought for improper purposes," and that a fee award was therefore appropriate. *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 195 (2d Cir. 2000). Huebner's arguments to the contrary are virtually identical to Poltorak PC's outlined above, and we reject them for the same reasons.

In sum, we conclude that the district court set forth sufficiently detailed

factual findings establishing that Huebner, Poltorak, and Poltorak PC brought a frivolous case and filed several frivolous motions in bad faith. The district court was therefore well within its discretion to sanction them.

## CONCLUSION

We have considered Huebner, Poltorak, and Poltorak PC's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.